UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ELLIOT BAUMGARDNER,

    Petitioner,

    v.

LAURA Y. ARMSTEAD, *Warden*, and
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No. TDC-21-3243

**MEMORANDUM OPINION**

Self-represented Petitioner Elliot Baumgardner, a state inmate currently incarcerated at the Maryland Correctional Institution in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 collaterally attacking his 2012 convictions and sentences in the Circuit Court for Montgomery County, Maryland on charges of armed robbery, first-degree burglary, and related offenses. The Petition is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED.

**BACKGROUND**

**I.    Convictions and Sentences**

On April 27, 2012, a jury in the Circuit Court for Montgomery County ("the Circuit Court") found both Baumgardner and a co-defendant, Phillip Young, guilty of one count of first-degree burglary, four counts of armed robbery, four counts of use of a handgun in the commission of a violent crime, four counts of false imprisonment, and one count of conspiracy to commit armed

robbery. The facts presented at trial included that on January 29, 2011 at approximately 8:00 p.m., multiple individuals committed a home invasion and armed robbery at a residence in Silver Spring, Maryland. At the time of the entry, the following individuals were at the residence: Juan Carlos Gomez, Jr. ("Gomez Jr."); his girlfriend, Monique Anderson; their one-month-old daughter; Gomez Jr.'s mother, Ana Gomez ("Ms. Gomez"); and his father, Juan Carlos Gomez, Sr. The incident began when multiple individuals banged on the front door and stated that they were the police and had a warrant. After Gomez Jr. opened the door, at least four men wearing Washington Metropolitan Area Transit Authority utility vests and armed with guns burst inside. All but one of the men wore a ski mask. The intruders apprehended all of the house's occupants and bound everyone except for Ms. Gomez, who was holding the baby. At one point, the man not wearing a mask was directed to watch Anderson and Ms. Gomez. The robbers searched the house, asked about money and drugs, and eventually removed a flat-screen television, laptop computers, jewelry, and other items.

A witness named Priscilla Medina testified that she was a friend of Gomez Jr. and had been to the residence before, and that she discussed a robbery of it with Darius Saxon, whom she was dating at the time, and Baumgardner, who is Saxon's half-brother. She testified that she, Saxon, and Baumgardner drove to the residence as part of planning the robbery, and that afterwards Baumgardner called her to ask for the exact address so he could "driv[e] by it to look at it with his friends." State Record ("S.R.") 144, ECF No. 6-1. The evidence against Baumgardner also included that he had purchased a pre-paid cell phone from T-Mobile that was used to make or receive phone calls in both the vicinity of the robbery location at the time of the robbery and in the area of residences associated with Young and another co-defendant, Maurice Jones, before and after the robbery.

Prior to trial, none of the victims present at the residence during the robbery had made a formal, positive identification of Baumgardner, but during trial, both Ms. Gomez and Anderson identified him as one of the robbers. On September 21, 2011, approximately six months before the trial, the prosecutor notified Baumgardner's trial counsel that in July 2011, while at the prosecutor's office, Ms. Gomez had seen a poster board with photographs of multiple suspects, including Baumgardner, and that on September 9, 2011, she told investigators that she recognized Baumgardner from that display as one of the robbers. The prosecutor, however, agreed not to elicit identification testimony from Ms. Gomez based on the circumstances of the original identification. At trial, the prosecutors made no mention of the identification in their opening statement or in their direct examination of Ms. Gomez. However, during cross examination, counsel for Young asked Ms. Gomez to describe the appearance of the unmasked robber's face, and she responded by identifying Baumgardner as one of the robbers. Although Baumgardner's trial counsel moved for a mistrial, the motion was denied.

Separately, although there had been no discovery provided to trial counsel disclosing that Anderson had identified Baumgardner as one of the robbers, and Anderson did not identify Baumgardner on direct examination, she identified Baumgardner in response to a question on cross examination intended to confirm that she could not make any such identification.

Baumgardner testified at trial and denied any involvement in the robbery, stated that he had never been to the Gomez residence, and asserted that he did not know Young. He claimed that on the night of the robbery, Saxon had borrowed his cell phone and returned it the next day.

On September 20, 2012, the trial court imposed on Baumgardner sentences that totaled 48 years of imprisonment.

## II. Post-Conviction Proceedings

Baumgardner filed a direct appeal to the Court of Special Appeals of Maryland, now known as the Appellate Court of Maryland ("the Maryland Appellate Court"), and asserted four errors: (1) the trial court erred in denying his motion for a mistrial; (2) the trial court erred in limiting examination of a witness during a hearing on Baumgardner's motion for a mistrial; (3) the trial court erred in limiting the cross examination of a detective regarding a prior inconsistent statement by Ms. Gomez; and (4) the trial court erred in denying his motion to sever. On June 2, 2008, the Maryland Appellate Court issued an opinion affirming Baumgardner's convictions and sentences. Baumgardner did not file a petition for a writ of certiorari with the Court of Appeals of Maryland, now the Supreme Court of Maryland.

On January 12, 2015, Baumgardner filed with the Circuit Court a self-represented Petition for Post-Conviction Relief ("the State Petition") pursuant to the Maryland Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7–101 to 7–204 (LexisNexis 2018), which was later supplemented by counsel. In the State Petition, Baumgardner asserted that his trial counsel had engaged in ineffective assistance of counsel by (1) eliciting, during the cross examination of Anderson, the testimony in which she identified Baumgardner as one of the robbers; (2) eliciting testimony from Baumgardner about a prior conviction for a firearms offense and about prior drug trafficking; (3) failing to object to improper cross examination of Baumgardner about otherwise inadmissible prior statements by Jones, who did not testify at the trial; and (4) failing to file a timely motion for modification of the sentence. The Circuit Court held a hearing on July 29, 2016 and issued a ruling from the bench on October 20, 2016 in which it granted Baumgardner leave to file a motion for modification of the sentence but otherwise denied the State Petition.

4

On November 18, 2016, Baumgardner filed an Application for Leave to Appeal the Denial of the Post-Conviction Petition. On October 3, 2017, the Maryland Appellate Court summarily denied Baumgardner's Application.

On April 15, 2019, Baumgardner filed a Motion to Reopen the Previously Closed Post Conviction Proceeding ("the Motion to Reopen"). With the assistance of counsel, Baumgardner argued that the post-conviction proceedings should be reopened because his post-conviction counsel engaged in ineffective assistance of counsel by failing to assert in the State Petition that his trial counsel was ineffective by: (1) failing to request a jury instruction on accomplice testimony; (2) failing to object to the trial court's voir dire question asking jurors to assess their own bias; (3) failing to file a motion *in limine* to preclude Ms. Gomez from making an in-court identification of Baumgardner; and (4) recommending that Baumgardner reject a plea offer and proceed to trial without having told him that he would be identified in court by Ms. Gomez. The last of these arguments was based on the facts that prior to trial, Baumgardner received a plea offer under which the prosecution would recommend a sentence of 7 to 15 years, and that his trial counsel recommended that he reject it but never told him that he would be identified by witnesses if he went to trial. The Circuit Court held an evidentiary hearing on March 26, 2021, and on April 16, 2021, it denied the Motion to Reopen in its entirety and declined to reopen Baumgardner's post-conviction proceedings.

## DISCUSSION

On December 20, 2021, Baumgardner filed with this Court the present Petition for a Writ of Habeas Corpus in which he asserts a single claim, specifically, that his trial counsel was ineffective for failing to provide him with "pertinent information" that he needed to make an informed decision on whether to reject the state's plea offer. Pet. at 5, ECF No. 1. Specifically,

Baumgardner focuses on the fact that although his trial counsel had told him that none of the victims would identify him at trial, the prosecutor had sent to his trial counsel an email on September 21, 2011, before the trial, notifying him that Ms. Gomez had seen the poster board with Baumgardner's photograph during a visit to the prosecutor's office in July 2011, and that on September 9, 2011, she told investigators that she recognized Baumgardner as one of the robbers. On February 25, 2022, Respondent filed an Answer contending that Baumgardner's sole claim is procedurally defaulted and lacks merit.

## I.      Legal Standards

### A.      Petitions for a Writ of Habeas Corpus

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and

apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id*. at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id*. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

When a petitioner alleges that his counsel's ineffective advice led to the rejection of a plea agreement, to demonstrate prejudice he must show that in the absence of the ineffective advice of counsel, there was "a reasonable probability that . . . the defendant would have accepted the plea," that "the prosecution would not have withdrawn it in light of intervening circumstances," that "the court would have accepted its terms," and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012).

## II.     Procedural Default

A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Maryland Appellate Court, and then to the Maryland Supreme Court, by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12–201, 12–301 (LexisNexis 2020). To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition filed in the Maryland Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7–101 to 7–103. After a decision on a state post-conviction petition, further review is available through an application for leave to appeal filed with the Maryland Appellate Court. *Id.* § 7–109. If the application is denied, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12–202.

When a petitioner has failed to exhaust state remedies, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to file a timely notice of appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (*per curiam*) (failure to raise a claim during post-conviction proceedings). As relevant here, a procedural default occurs when a habeas petitioner failed to exhaust such available state remedies and "the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1).

Here, Baumgardner did not assert the claim at issue—ineffective assistance of trial counsel based on the alleged failure to provide pertinent information relating to the decision whether to plead guilty—in either his direct appeal or in the State Petition. In his Motion to Reopen, Baumgardner asserted the related but different argument of ineffective assistance of post-conviction counsel based on his post-conviction counsel's failure to argue that his trial counsel was ineffective in relation to his advice about the plea agreement. In denying the Motion to Reopen, the Circuit Court effectively barred Baumgardner from asserting the present argument in state court based on his failure to have raised it in the State Petition and his failure to show that reopening of the state post-conviction proceedings to assert this and other arguments was "in the interests of justice." Md. Code. Ann., Crim. Proc. § 7–103 (limiting a defendant to one state petition for post-conviction relief); *id.* § 7–104 (permitting the reopening of state post-conviction proceedings upon a determination that it is "in the interests of justice"). Thus, Baumgardner never fairly presented that ineffective assistance of trial counsel claim to the state courts for review, and the state court will no longer consider the claim based on the application of its procedural rules. Baumgardner's single claim for federal habeas relief is therefore procedurally defaulted. *See Horner v. Nines*, 995 F.3d 185, 211-12 (holding that where the petitioner did not raise a specific claim in either the initial state post-conviction proceedings or in subsequent state post-conviction proceedings following a successful motion to reopen, petitioner's claim was procedurally defaulted on federal habeas review).

### III.    Exceptions to Procedural Default

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," resulting in a denial of "fundamental fairness." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Although Baumgardner was notified that he had the right to file a Reply to the Answer to address the argument that his claim is barred by the procedural default doctrine, including to provide a basis for the Court to find cause and prejudice as needed to excuse a procedural default, Baumgardner did not file a Reply. The Court nevertheless considers whether the record provides grounds for finding cause and prejudice. Based on Baumgardner's argument to the state post-

11

conviction court on his Motion to Reopen, the Court presumes that Baumgardner's argument on cause would be that his post-conviction counsel's failure to make the present argument in the State Petition constituted ineffective assistance of counsel. The Supreme Court has recognized that where post-conviction counsel erred in failing to raise ineffectiveness of trial counsel as a basis for relief at the initial stage of collateral proceedings, such an error may establish cause to excuse procedural default of the ineffectiveness claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). For this rule to apply, the court must find that (1) "the ineffective-assistance-of-trial-counsel claim is a substantial one"; (2) the "cause" for default is that there was "no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) "state law requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

The Court need not determine whether cause for the procedural default existed on this basis because even if it did, Baumgardner has not established prejudice. Based on the record before it on the Motion to Reopen, the Circuit Court made a finding that trial counsel had not acted ineffectively in recommending that Baumgardner accept the plea agreement and, in turn, that post-conviction counsel was not ineffective for failing to raise the claim in the State Petition. The Circuit Court found that the trial judge had placed the terms of the plea agreement on the record and questioned Baumgardner about those terms, such that Baumgardner was fully aware of them. As for Baumgardner's claim that his trial counsel failed to tell him that Ms. Gomez would identify him at trial, the Circuit Court found that trial counsel had not acted deficiently because "trial counsel reasonably believed at the time of advising Mr. Baumgardner" that such evidence "would

not come out at trial," and though "the trial went not as anticipated," it declined to apply "20/20 hindsight" to assess whether trial counsel's performance was deficient. 4/26/21 Hrg. Tr. at 19-20, ECF No. 6-8. While the record reflects that trial counsel was informed by the prosecutors that Ms. Gomez recognized Baumgardner from the poster board inadvertently revealed to her, the prosecutors had agreed not to elicit identification testimony from Ms. Gomez, presumably because of the arguably suggestive way in which the original identification came about. Furthermore, trial counsel specifically confirmed that point during a bench conference he requested during Ms. Gomez's trial testimony, and the trial court cautioned the prosecutors to proceed carefully and even agreed to have the prosecutors use leading questions to avoid eliciting such testimony. There is no basis to conclude that trial counsel knew, or could have reasonably expected, that Young's counsel would unwittingly elicit identification testimony.

Likewise, although not specifically referenced in the Petition, the record also demonstrates that trial counsel had no reason to believe that Anderson would identify Baumgardner at trial. Specifically, at the hearing on the State Petition, trial counsel testified that there had been no discovery that would provide a basis to believe that Anderson could identify any of the robbers, and that her testimony identifying Baumgardner was a surprise. In ruling on the State Petition, the Circuit Court concluded that Baumgardner's trial counsel reasonably believed from pretrial discovery that Baumgardner would not be identified at trial.

Furthermore, at the hearing on the State Petition, Baumgardner's trial counsel provided reasonable bases for recommending that Baumgardner reject the plea deal and go to trial. Trial counsel testified that his "overriding concern" was Baumgardner's consistent position that Baumgardner was innocent, as reflected by the fact that Baumgardner "was so disgusted by the thought that somebody else would think that he committed another crime," and that he also relied

on the fact that based on what he knew at the time, "there was no objective evidence that indicated" that Baumgardner was at the scene of the crime. 7/29/16 Hrg. Tr. at 18-19, 45-46, ECF No. 6-6.

Finally, in ruling on Baumgardner's Motion to Reopen, the Circuit Court also found that there had been no showing of prejudice as needed to establish ineffective assistance of counsel under *Strickland* because Baumgardner never testified that "if he had known or been provided certain information, that he would have entered a plea of guilty in this case . . . ." 4/26/21 Hrg. Tr. at 20. The Circuit Court's findings thus demonstrate that Baumgardner had not shown that "but for the ineffective advice of counsel there is a reasonable probability that . . . the defendant would have accepted the plea." *Lafler*, 566 U.S. at 164.

Based on this record, including the Circuit Court's findings, the Court concludes that it is likely that, even if the Court were to consider the merits of Baumgardner's claim, it would not find deficient performance arising from trial counsel's advice about the plea offer because trial counsel did not have reason to believe that witnesses would identify Baumgardner at trial. Under these circumstances, the Court finds that Baumgardner has not established that the failure to consider the merits of his claim now will cause prejudice in that the alleged error "worked to his *actual* and substantial disadvantage" and that the merits of his claim would have succeeded if raised on the merits below, as would be necessary to excuse the procedural default. *Frady*, 456 U.S. at 170; *see Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (examining whether actual prejudice sufficient to excuse procedural default is present by addressing "whether state habeas counsel would have succeeded" had the procedurally defaulted claim been raised in post-conviction proceedings).

Finally, the Court finds that the procedural default cannot be excused based on a "fundamental miscarriage of justice" because Baumgardner, while identifying alleged legal errors relating to his trial, has not provided a basis to conclude that he "is actually innocent." *See Murray*,

477 U.S. at 495-96. The Petition will therefore be dismissed because the sole claim asserted was procedurally defaulted.

## IV. Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a petition is denied on procedural grounds, the petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Here, Baumgardner's claim is dismissed on procedural grounds, and, upon review of the record, this Court finds that Baumgardner has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Baumgardner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b)(1).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DISMISSED. The Court will decline to issue a certificate of appealability. A separate Order shall issue.

Date: February 21, 2024

THEODORE D. CHUANG
United States District Judge